**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

James Lichtenberg,

          Plaintiff,

v.

Commissioner of Social Security Administration,

          Defendant.

No. CV-23-00137-PHX-JAT

**ORDER**

Pending before the Court is Plaintiff James Lichtenberg's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits based on a finding that Plaintiff is no longer disabled. (Doc. 1). Plaintiff filed his opening brief on June 2, 2023, (Doc. 12), and Defendant responded on June 27, 2023, (Doc. 14). The Court now rules.

## I.     BACKGROUND

The issues presented in this appeal are whether the Administrative Law Judge ("ALJ") erred in determining the severity of impairment at step two of the evaluation process laid out below. (Doc. 12 at 1). Plaintiff raises further issues arising out of the severity determination: (1) whether the ALJ should have considered Listing 12.06, (2) whether the ALJ improperly evaluated Plaintiff's testimony, and (3) whether the ALJ erred in finding medical improvement sufficient to cease benefits. (*Id.*).

### A. Factual Overview

Plaintiff was 36 years old at the time he was initially determined to be disabled as

of October 8, 2013. (Doc. 12 at 1). This determination, made on June 2, 2015, serves as the comparison point decision ("CPD"). (Doc. 14 at 2). Plaintiff was subsequently determined no longer to be disabled as of December 1, 2017. (Doc. 12 at 1). He filed a Request for Reconsideration on January 3, 2018, which was denied on July 24, 2019. (*See* Doc. 10-2 at 1). Plaintiff then appeared and testified at a hearing before the ALJ in September 2021. (Doc. 14 at 2). In March 2022, the ALJ found that Plaintiff's disability ended on December 1, 2017. (*Id.*).

### B.  The SSA's Eight-Step Evaluation Process for Continuing Disability

In order to determine whether a claimant's disability is continuing or has ceased, and therefore, whether the claimant is still entitled to disability benefits, ALJs are required to follow an eight-step process. *See* 20 C.F.R. § 404.1594(f).

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." *Id.* § 404.1594(f)(1). Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and gainful," done "for pay or profit." *Id.* §§ 404.1572(a)–(b). if the claimant has engaged in substantial gainful activity, the claimant's disability is deemed to have ceased and benefits are terminated. *Id.* §404.1594((f)(1). If the claimant is not engaged in substantial gainful activity, the analysis proceeds to prong two. *Id.*

At step two, the ALJ analyzes whether the claimant's impairment meets or equals the impairments set out in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1594(f)(2). If a Listing is met, the claimant continues to be disabled, and the evaluation stops. *Id.* If not, the analysis proceeds to step three. *Id.*

At step three, the ALJ evaluates whether medical improvement has occurred since the original determination of disability. *Id.* § 404.1594(f)(3). If a medical improvement resulted in a decrease in the medical severity of the claimant's impairments, the analysis proceeds to the next step. If no medical improvement occurred, the analysis skips to step five. *Id.*

At step four, the ALJ determines whether the medical improvement is related to the

1   claimant's ability to work. *Id.* § 404.1594(f)(4). Medical improvement is related to the

2   ability to work if it results in an increase in the claimant's capacity to perform basic work

3   activities. *Id.* If the improvement is related, the analysis skips to step six. *Id.* However, if

4   the improvement is not related, the analysis proceeds to step five. *Id.*

5          Step five applies in one of the following situations: (1) there has been no medical

6   improvement; or (2) the improvement is unrelated to the claimant's ability to work. *Id.* §

7   404.1594(f)(3)–(4). At step five, the ALJ analyzes whether any exception to medical

8   improvement exists. *Id.* § 404.1594(f)(5). If no exception applies to the claimant, the ALJ

9   must still find the claimant to be disabled. *Id.* If the first group of exceptions applies to the

10  claimant, *see id.* § 404.1594(d), the analysis advances to step six, *id.* If the second group

11  of exceptions applies to the claimant, *see id.* § 404.1594(e), the ALJ will find that the

12  claimant's disability has ended, *id.* § 404.1594(f)(5).

13         At step six, the ALJ evaluates whether the claimant's impairments are sufficiently

14  severe to limit his physical or mental abilities to do basic work activities. *Id.* §

15  404.1594(f)(6). If the impairments are not sufficiently severe, the claimant is no longer

16  disabled. *Id.* Otherwise, the analysis proceeds to step seven. *Id.*

17         At step seven, the ALJ assesses the claimant's current residual functioning capacity

18  ("RFC") to determine whether he can perform past relevant work. *Id.* § 404.1594(f)(7). If

19  the claimant has the capacity to perform past relevant work, the claimant is no longer

20  disabled. *Id.* If not, the analysis proceeds to step eight. *Id.*

21         Finally, at step eight, the ALJ determines whether the claimant can perform any

22  other substantial gainful activity. *Id.* § 404.1594(f)(8). If so, the claimant is no longer

23  disabled. *Id.* If not, the claimant's disability continues. *Id.*

24                    **C. The ALJ's Application of the Eight-Step Process**

25         At the first step, the ALJ determined that Plaintiff had not engaged in substantial

26  gainful activity through the date last insured, so the ALJ proceeded to the second step.

27  (Doc. 10-3 at 17).

28         At the second step, the ALJ determined that Plaintiff has not had an impairment or

combination of impairments that met or medically equaled the severity of an impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18).

At the third step, the ALJ determined that the medical evidence supported a finding that by December 1, 2017, medical improvement had occurred as to both Plaintiff's vision disorder and mental impairments. (*Id.* at 20).

At the fourth step, the ALJ determined that Plaintiff's medical improvement was related to his ability to work because the improvement "resulted in an increase in [Plaintiff's] residual functional capacity." (*Id.* at 24). Because of the ALJ's finding at step four, the ALJ skipped step five.

At the sixth step, the ALJ determined that between December 1, 2017 and the date last insured of June 30, 2018, Plaintiff continued to have a severe impairment or combination of impairments. (*Id.* at 25). Namely, the ALJ found that although Plaintiff's vision impairment was no longer severe, Plaintiff's impairment of bipolar disorder still caused "more than minimal limitation in [Plaintiff's] ability to perform basic work activities." (*Id.*).

At the seventh step, after evaluating Plaintiff's current RFC, the ALJ concluded that Plaintiff could "perform a full range of work at all exertional levels," except that Plaintiff is limited to "simple tasks consistent with unskilled work; in a work environment without conveyor belt-paced production requirements; where standard work breaks are provided; with only occasional, superficial contact with others . . . [and] jobs not requiring night driving." (*Id.* at 20). The ALJ concluded that since December 1, 2017, through the date last insured, Plaintiff has been unable to perform past relevant work. (*Id.* at 25).

At the eighth and final step, the ALJ concluded that since December 1, 2017, through the date last insured, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff has been able to perform a significant number of jobs in the national economy. (*Id.*).

1    **II.    LEGAL STANDARD**

2         **A.  Review of the ALJ Decision**

3         This Court may not overturn the ALJ's denial of disability benefits absent legal error

4    or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

5    "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept

6    as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

7    (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).

8    On review, the Court "must consider the entire record as a whole, weighing both the

9    evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may

10   not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting

11   *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws

12   inferences, resolves conflicts in medical testimony, and determines credibility. *See*

13   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,

14   1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more

15   than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The

16   Court "review[s] only the reasons provided by the ALJ in the disability determination and

17   may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at

18   1010.

19   **III.    DISCUSSION**

20        **A.  The ALJ's Evaluation of the Severity of Impairments at Step Two**

21        Plaintiff first argues that the ALJ erred in determining the severity of Plaintiff's

22   impairments at Step Two of the evaluation process. (Doc. 12 at 5). Specifically, Plaintiff

23   argues that the ALJ failed to "identify, consider, and properly evaluate Plaintiff's medically

24   determinable severe and non-severe impairments," namely that "[t]he ALJ undertook no

25   evaluation of mental impairments consistent with the regulations." (*Id.* at 5–6). In support

26   of his argument that he still suffers from severe anxiety and bipolar disorder, Plaintiff

27   enumerates the following examples from Plaintiff's testimony at his hearing: "experiencing

28   significant mental disruption, including a history of being laid off on numerous occasions,

and not being able to cope with the normal stress involved in the expected employment hiring process." (*Id.* at 6). He has also testified that his anxiety is "'always there,'" that "'if something were to set [him] off,'" he could not control himself, that he has experienced panic attacks, and that he was hospitalized in 2014 "after contemplating homicidal violence with his ex-wife." (*Id.* at 6–7). Plaintiff asserts that the ALJ's lack of analysis is "inconsistent with SSR 85-28, which requires the ALJ to evaluate each mental impairment as a single impairment, and in combination with other impairments to define its combined effect on [Plaintiff's] work capacity." (*Id.* at 7–8).

Defendant argues that the ALJ reasonably evaluated the severity of Plaintiff's mental impairments for several reasons. Defendant points out that the ALJ here "expressly found that only Plaintiff's bipolar disorder remained severe," and that substantial evidence supports this finding because "doctors diagnosed only bipolar disorder during and around the period at issue, even though Plaintiff reported various mental symptoms such as anxiety and stress." (Doc. 14 at 6).

Defendant further argues that Plaintiff fails to establish harm because step two of the evaluation process is not used to evaluate the impairments to take into account when determining the RFC; rather, it is a mere threshold to screen out weak claims. (*Id.*). Thus, Defendant argues, the ALJ's RFC determination is the same regardless of whether certain impairments are considered severe or not, making the determination inconsequential to the ultimate non-disability determination. (*Id.*).

The Court agrees with Defendant that *Buck v. Berryhill* is instructive here. 869 F.3d 1040 (9th Cir. 2017). In *Buck*, the Ninth Circuit Court of Appeals stated the following:

> Step two is merely a threshold determination meant to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-

> 8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC
> therefore *should* be exactly the same regardless of whether
> certain impairments are considered "severe" or not.

*Id.* at 1048–49 (emphasis in original). Thus, as a matter of law, whether the ALJ erred in failing to classify certain impairments as "severe" is not reversible error so long as the ALJ still considered all severe and non-severe impairments when making an RFC determination. The Court thus finds Plaintiff's first argument unavailing to the extent that Plaintiff seeks reversal on the basis of the ALJ's failure to classify certain impairments as severe at Step Two. The rest of Plaintiff's argument in this section of his opening brief pertains to the ALJ's RFC determination. The Court addresses the adequacy of the ALJ's RFC determination—an inquiry entirely separate from the inquiry under Step Two—below.

### B. The ALJ's Determination Regarding Listing 12.06 at Step Two

Relatedly, Plaintiff next argues that the ALJ erred by failing to consider whether Plaintiff met or equaled Listing 12.06 "despite Plaintiff's repeated assertion that he met this listing." (Doc. 12 at 8). Listing 12.06 reads as follows, in relevant part:

> 12.06 Anxiety and obsessive-compulsive disorders (see 12.00B5), satisfied by A and B, or A and C:
> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
> 1. Anxiety disorder, characterized by three or more of the following;
> a. Restlessness;
> b. Easily fatigued;
> c. Difficulty concentrating;
> d. Irritability;
> e. Muscle tension; or
> f. Sleep disturbance. . . .
> AND
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. pt. 404, subpt. P, app'x 1, §§ 12.06(A)(1), (B), (C).

To support his argument that he meets Listing 12.06, Plaintiff first argues that he satisfies Section (A) because "'his testimony and medical treatment record from Southwest Behavioral, Phoenix Psychology, and Dr. Gallucci's evaluation support his diagnosis of severe generalized anxiety disorder characterized by (i) restlessness; (ii) irritability; and (iii) sleep disturbance.'" (Doc. 12 at 9 (citations omitted)). Plaintiff further argues that he has made a proper showing under Section (B) because the record shows that he "'has marked limitations with interaction with others, his ability to concentrate for extended periods and maintain pace, and his ability to tolerate even low levels of stress in a workplace environment.'" (*Id.*). In the alternative, Plaintiff argues he also satisfies Section (C) because "'his treatment record establishes he has at least 2 years of mental health treatment including psychotherapy and weekly counseling sessions in highly structured settings with only marginal adjustment.'" (*Id.*). Plaintiff asserts that the ALJ erroneously considered only Listing 12.04 (addressing depression or bipolar disorder), (*Id.* at 10), which deprived Plaintiff of an opportunity to demonstrate disability. (*Id.* at 13).

Defendant argues that the ALJ reasonably concluded that Plaintiff's impairments did not meet or equal a mental listing. (Doc. 14 at 7). Defendant further argues that even if the ALJ should have considered whether Plaintiff met the listing for anxiety disorder, the alleged error was inconsequential to the ultimate determination and therefore harmless. (*Id.*

at 9). Defendant states that Plaintiff has provided no probative evidence to negate the ALJ's findings that Plaintiff did not satisfy Sections (B) or (C) of Listing 12.04, as the only evidence Plaintiff provides is from outside the relevant time window. (*Id.* at 9–10).

The Court first finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet Listing 12.04. Section (B) of Listing 12.04 lists the same requirements as Section (B) of Listing 12.06 above. As to understanding, remembering, or applying information, the ALJ noted that in an August 2018 consultative examination, "[Plaintiff's] attention and concentration were at normal levels. His thinking was logical, goal-directed and linear," and that his treatment records indicated "age-appropriate memory." (Doc. 10-3 at 18). As to interacting with others, the ALJ found that Plaintiff's treatment records indicate "that his behavior was appropriate with fair to good eye contact, clean appearance, and cooperative attitude," and that at his consultative examination, Plaintiff "cooperated and did not appear to be responding to internal stimuli." (*Id.* at 19). As to concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff homeschooled his son, and that at his consultative examination, Plaintiff's "comprehension was good, and he appeared to function in the average range of intelligence." (*Id.*). Finally, as to adapting or managing oneself, the ALJ found that Plaintiff was able to go to Disney World, attend and enjoy a weekly creative writing class, pursue hobbies such as fixing computers, and engage in daily living activities. (*Id.*). Thus, substantial evidence supports the ALJ's conclusion that Plaintiff does not satisfy Section (B).

The ALJ then considered Section (C) and found that the evidence failed to establish the presence of Section (C) criteria. The ALJ stated that "the evidence indicates that [Plaintiff] is able to adapt to at least minimal changes in his environment," so the second mandatory element of Section (C) was not met. (*Id.*). In light of the evidence the ALJ listed in his decision, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not satisfy Section (C) of Listing 12.04.

Because Listing 12.06 lists the same Section (B) and Section (C) elements, it was not reversible error for the ALJ not to consider Listing 12.06 explicitly. *See Molina v.*

1    *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error is harmless when it is

2    inconsequential to the ultimate nondisability determination").[1] Indeed, an ALJ is not

3    required, as a matter of law, "to state why a claimant failed to satisfy every different section

4    of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

5    Thus, the Court finds no reversible error in the ALJ's failure to evaluate whether Plaintiff's

6    impairments met or medically equaled Listing 12.06.

### C. The ALJ's Evaluation of Plaintiff's Subjective Testimony

8    Plaintiff then argues that the ALJ improperly evaluated Plaintiff's testimony, stating

9    that "the ALJ's evaluation of Plaintiff's subjective allegations was important to properly

10   determine [Plaintiff's] disability." (Doc. 12 at 13). Specifically, Plaintiff argues that the

11   ALJ failed to address the following deficits evidenced by Plaintiff's hearing testimony:

12   panic attacks that prevented Plaintiff from working, frequent irritability triggered by even

13   low-level stress, several emotional outbursts with others, and profound inability to interact

14   with others. (*Id.* at 13–14). Plaintiff asserts that the ALJ gave no reason for rejecting

15   Plaintiff's testimony that described his mental deficiencies, which resulted in an RFC

16   determination that "fails to account for significant deficits regarding Plaintiff's mental

17   capacity to work." (*Id.* at 14–15).

18   Defendant argues that "the ALJ considered Plaintiff's allegations of debilitating

19   mental limitations, and he partially accounted for them by limiting Plaintiff to a restricted

20   range of simple work with only occasional, superficial interaction with others." (Doc. 14

21   at 11). Defendant further states that the ALJ properly (1) used contrary objective evidence

22   and doctors' opinions, (2) found Plaintiff had a favorable response to conservative

23   treatment, and (3) found that Plaintiff engaged in activities that are incompatible with the

24   severity of symptoms alleged, all as reasons to discount Plaintiff's testimony. (*Id.* at 11–

25   ---

[1] The Court acknowledges that Section (C) is somewhat distinct between Listing 12.04 and
Listing 12.06 in that Section (C) pertains to whether each particular disorder—i.e.,
depressive or bipolar disorder under 12.04 and anxiety disorder under 12.06—is "serious
and persistent." However, the ALJ expressly found that the record indicated that Plaintiff
"did not have a serious and persistent depressive, *anxiety* or related disorder." (Doc. 10-3
at 19 (emphasis added)). Moreover, as discussed previously, the ALJ cited substantial
evidence supporting this conclusion. Thus, any error the ALJ may have committed by not
expressly considering Listing 12.06 is harmless.

12).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of his symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

The Court finds that the ALJ did not commit reversible error when he discounted Plaintiff's hearing testimony. In his decision, after first finding that Plaintiff had presented evidence of an underlying impairment that could reasonably be expected to produce pain

1    or other symptoms alleged, the ALJ stated the following:

2           Despite complaints of disabling mental impairments,
3    his mental status examinations were generally stable through
     the date last insured, with mostly mild symptoms (Ex. B1F,
4    B2F, B23F). Additionally, the treatment the claimant received
     was generally routine and conservative. He was stable with
5    compliance with his medication, including Lithium and
6    hydroxyzine (Ex. B23F/34). Finally, the claimant's daily
     activities are inconsistent with a claim for disability. During
7    the period at issue, he was able to go to Disney on vacation
8    (Ex. B16F/57), attend and enjoy a weekly creative writing class
     (Ex. B16F/170), express a desire to return to school to obtain
9    an engineering degree (Ex. B2F/13), pursuing hobbies such as
10   fixing computers (Ex. B2E/7), and engaging in most daily
     living activities, including personal hygiene, cleaning, laundry,
11   interacting with his son, and going places independently (Ex.
12   B5F/1-5; Hearing Testimony). The 2018 consultative
     examination revealed similar results (Ex. B8F).
13          For these reasons, the claimant's hearing testimony
14   received careful consideration but was ultimately not
     persuasive. Overall, the evidence is not consistent with the
15   extent of the claimant's allegations.

16   (Doc. 10-3 at 23). The Court finds that the ALJ cited clear and convincing reasons as to

17   why he discounted Plaintiff's testimony to the degree he did. Moreover, the ALJ did not

18   fully discount Plaintiff's testimony; he adjusted his RFC determination to account for

19   Plaintiff's non-severe bipolar disorder and non-severe vision impairment. (*Id.*). Thus, the

20   Court finds that substantial evidence supports the ALJ's decision to discount Plaintiff's

21   subjective testimony.

22          **D. The ALJ's Conclusion that Plaintiff Demonstrated Medical**
23              **Improvement**

24          Finally, Plaintiff argues that the ALJ erroneously concluded the evidence

25   demonstrated medical improvement sufficient to cease benefits, advancing various

26   contentions. (Doc. 12 at 16). Plaintiff first reiterates that the ALJ improperly discounted

27   Plaintiff's testimony, asserting that the Ninth Circuit Court of Appeals has found ALJ error

28   when the ALJ failed to articulate sufficient reasons for refusing to credit a Plaintiff's

1   testimony. (*Id.* (citation omitted)). Plaintiff points out that the ALJ provided reasoning to

2   discount testimony only as to Plaintiff's statements regarding his bipolar disorder. (*Id.* at

3   17).

4       Plaintiff further argues that "the ALJ's determination of medical improvement was

5   not based on substantial evidence" because the rationale the ALJ provided "establishes

6   sufficient reasons to support some improvement regarding physical impairments, but no

7   explained basis for finding improvement with respect to mental impairments." (*Id.*).

8   Plaintiff states that he was not found disabled for any reason related to physical

9   impairments; thus, the ALJ's reliance on improvements in his physical impairments

10  "offered no justifiable basis for medical improvement." (*Id.* at 18).

11      Plaintiff next argues that "the ALJ's explanation to establish medical improvement

12  was inconsistent with the regulations" because the ALJ's explanation provided just a

13  "general reference to medical exhibits without an explanation as to how Plaintiff's medical

14  improvement was established with specificity." (*Id.* at 19).

15      Additionally, Plaintiff argues that the ALJ's reason to discount Dr. Gallucci's

16  opinion is not supported in light of the record as a whole. (*Id.*). Specifically, Plaintiff points

17  out that although Dr. Gallucci's initial assessment of Plaintiff did not include a diagnosis

18  of severe anxiety, Dr. Gallucci's opinion of Plaintiff's condition changed "after having the

19  opportunity to conduct a comprehensive psychological evaluation of [Plaintiff]." (*Id.*).

20  Plaintiff asserts that the ALJ ignored this change of opinion, instead finding that Dr.

21  Gallucci's examination report was "not persuasive because it was produced well beyond

22  the date last insured." (*Id.* at 20). Further, Plaintiff argues that the ALJ "applied a different

23  standard to Dr. Gallucci's opinion than afforded all other opinions." (*Id.*).

24      Finally, Plaintiff cites to *Attmore v. Colvin*, a case that Plaintiff asserts is analogous

25  to the case here. 827 F.3d 872 (9th Cir. 2016). Plaintiff argues that, like in *Attmore*, the

26  ALJ here "never considered how bipolar disorder was a condition that included waxing

27  and waning of symptoms." (Doc. 12 at 21).

28      Defendant argues that the ALJ has cited ample evidence to support his finding that

- 13 -

1   Plaintiff's impairments have improved. (Doc. 14 at 14–15). Additionally, Defendant

2   asserts that Plaintiff has forfeited any arguments regarding his visual impairment because

3   he has not raised any such arguments in his opening brief. (*Id.* at 15). Finally, Defendant

4   argues that the ALJ did, in fact, cite to portions of the record that "expressly discussed the

5   normal medical signs and improved symptoms by late 2017," and that a reviewing court

6   must look to all pages of an ALJ decision when reviewing it for substantial evidence. (*Id.*

7   at 15–16).

8       At step three of a continuing disability review, an ALJ considers whether a claimant

9   has experienced medical improvement. Medical improvement is "any decrease in the

10  medical severity of [an] impairment." 20 C.F.R. § 404.1594(b)(1). This determination

11  involves a comparison between the claimant's condition at the CPD and the claimant's

12  present condition using "symptoms, signs, and/or laboratory findings associated with [the]

13  impairment(s)." *Id.*

14      The Court addresses each of Plaintiff's contentions in turn. First, as discussed above,

15  the Court finds no reversible error in the ALJ's decision to discount Plaintiff's testimony.

16  Plaintiff's citation to *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), is unavailing because

17  here, the ALJ provided numerous specific citations to the record to justify discounting

18  Plaintiff's testimony. Moreover, Plaintiff's citation to a portion of the ALJ decision that

19  explicitly mentions bipolar disorder but not anxiety disorder takes this portion of the

20  decision out of context. The mention of just bipolar disorder to which Plaintiff cites in his

21  brief was made with regard to limiting Plaintiff's RFC, not with regard to which types of

22  testimony the ALJ considered. Thus, the Court finds no reversible error on this ground.

23      The Court disagrees with Plaintiff's argument that the ALJ provided no evidence or

24  rationale for his determination that medical improvement had occurred with regard to

25  Plaintiff's mental impairments. To the contrary, the ALJ engaged in a lengthy analysis of

26  various portions of the medical record and available testimony before coming to his

27  conclusion. (*See* Doc 10-3 at 21–24). The ALJ did not hinge his finding of medical

28  improvement on improvement to Plaintiff's vision impairment alone—he considered both

- 14 -

physical and mental impairments. (*Id.*). Similarly, the Court does not find that the ALJ failed to explain with specificity how the medical record demonstrates improvement. (*Id.*).[2] The Court further notes that the ALJ reasonably discounted Dr. Gallucci's February 4, 2021, opinion because it was rendered after the date last insured. (*Id.* at 24).[3]

Finally, the Court addresses Plaintiff's citation to *Attmore* for the proposition that the ALJ here failed to consider "probative medical evidence that confirmed Plaintiff's impairments waxed and waned over time." (Doc. 12 at 21). In his opening brief, however, Plaintiff provides just one example of such evidence—Dr. Gallucci's February 4, 2021, opinion, which Plaintiff characterizes as a "changed" opinion from her 2018 opinion. This argument is unavailing for multiple reasons. First, as noted above, the ALJ reasonably discounted the statements made in the 2021 opinion because it was made well after the date last insured. Second, upon examining Dr. Gallucci's 2021 opinion, the Court finds it to be largely consistent with the ALJ's findings and RFC assessment. Dr. Gallucci opined that Plaintiff was unable to concentrate for extended periods of time or maintain regular attendance, but also that Plaintiff had no evidence of cognitive impairment, could carry out simple and detailed instructions, could interact appropriately in brief and superficial ways with the public, and was able to respond to changes in a routine work setting. (Doc. 11-9 at 116). Thus, as Plaintiff has pointed to no other examples of probative evidence that *Attmore* would require the ALJ to consider, this Court finds no reversible error on this ground, or on any other ground discussed above.

## IV.   CONCLUSION

For the foregoing reasons,

---

[2] For example, the ALJ listed Plaintiff's various activities such as his hobbies and trips to Disney World, cited and discussed multiple doctors' statements, and referenced the lay witness statements from the record. He provided justification for the weight he gave each, and he explained the significance of each to his determination. (*See* Doc. 10-3 at 21–24).
[3] *See Ball v. Colvin*, 607 Fed. Appx. 709, 709–10 (9th Cir. 2015) (finding the ALJ reasonably discounted a physician's report when it was "rendered more than two years after [the] date last insured"). The Court further notes that the ALJ somewhat discounted Dr. Gallucci's August 21, 2018, opinion in a manner which was favorable to Plaintiff. The ALJ noted that this 2018 opinion found that Plaintiff had no severe impairments, but then stated the following: "However, I find, based on the medical record between the CPD and the date last insured, that [Plaintiff] had a severe mental impairment lasting 12 months or more." (Doc. 10-3 at 24).

1      **IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall

2  enter judgment accordingly.

3      Dated this 9th day of November, 2023.

James A. Teilborg
Senior United States District Judge